## Ricca v. Jackson

C.P. of Bucks County, no. 96-05145-17-2.

*Vincent Melchiorre,* for plaintiff.
*Colin Hannings,* for defendant.

SCOTT, *J.,* May 5, 2000—The matter presently before the court involves a claim by Marco Ricca against Margaret Jackson for damages arising out of an automobile accident. Plaintiff alleged that defendant, while driving her car, failed to yield the right of way and caused a collision. On October 27, 1999, after a two-day trial, the jury returned a verdict in favor of defendant on the issue of causation. Plaintiff filed timely post-trial motions asking for judgment n.o.v. or, in the alternative, a new trial. We offer this opinion in support of our decision to grant a new trial on the issue of damages only.

The automobile accident at issue occurred on December 10, 1994. The record discloses that on that date, the defendant exited the parking lot of a restaurant into the lane of traffic in which plaintiff was traveling. Plaintiff blew his horn and hit his brakes, but he was unable to stop before colliding with defendant's car. Plaintiff was going 45 miles per hour when defendant pulled out in

front of him, and the collision totaled plaintiff's car, a 1983 Buick Regal.

Plaintiff alleged he was dazed and injured his knee. He refused, however, to be taken to the hospital in an ambulance, because he was concerned about his dog, which had been riding in the car with him at the time of the accident. Subsequently, a bystander drove plaintiff to his house so he could drop off his dog and then took plaintiff to Frankford Hospital. At the hospital, plaintiff was examined by the hospital personnel and released. They told him that he should see his family physician, Dr. Julius Mingroni, about further treatment of his injuries.

Plaintiff saw Dr. Mingroni on December 13, three days after the accident. In this first visit, plaintiff complained of injuries to his cervical spine (neck), his right knee, and his lumbosacral spine (lower back). The doctor described the symptoms as complaints of severe neck pain with limitation of motion and spasms, as well as lower back pain with spasms. The knee injury subsequently healed, but plaintiff continued to complain of daily pain between his shoulder blades and the occasional slight loss of sensation and strength in his right hand. Plaintiff stated that at times, this daily pain in his back would increase severely. Plaintiff had never mentioned any neck or back problems prior to the accident to Dr. Mingroni. The doctor initially prescribed Flexeril (a muscle relaxant), Naprosyn (an anti-inflammatory) and physical therapy to try to alleviate the back pain. Plaintiff started going to therapy three times a week in December of 1994 and continued the therapy for six months.

The therapy failed to provide any lasting relief to plaintiff. Dr. Mingroni then asked to have an MRI done on plaintiff's spine because of plaintiff's continued com-

plaints of pain in his neck and back. Also, plaintiff was referred to Dr. Resnick, a neurologist, and Dr. Salkind, a neurosurgeon. He also treated with a chiropractor. Plaintiff testified, however, that the chiropractor treatments failed to give him any long-term relief. After reviewing the MRIs and consulting with Dr. Resnick and Dr. Salkind, Dr. Mingroni diagnosed plaintiff as having a herniated disc at the level of C5-C6 (neck) and a bulging disc at the level of L5-S1 (lower back).

The two neurosurgeons plaintiff consulted with, Dr. Salkind and Dr. O'Connor, both recommended surgery as a possible means to alleviate plaintiff's problem. Plaintiff, however, had concerns regarding the success rate of the operation, the administration of general anesthesia, and the actual procedure itself. After weighing the possible good outcomes from the surgery with the possible bad outcomes, plaintiff decided to forego this option for the time being.

On July 10, 1996, plaintiff filed this suit against defendant Jackson in Bucks County, alleging negligence. The case went to trial on October 26, 1999. During the trial, defendant stipulated that she was negligent in driving her car and that this negligence caused the accident. Trial transcript, pp. 140-41. On October 27, 1999, the jury returned a verdict in favor of defendant, finding that defendant's negligence was not "a substantial factor in bringing about the plaintiff's harm." This post-trial motion followed.

In his motion for post-trial relief, plaintiff requests the court to grant a new trial and judgment n.o.v. We will discuss each of these issues in turn below.

## 1. NEW TRIAL

A new trial should be awarded "when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice." *Martin v. Evans,* 551 Pa. 496, 501, 711 A.2d 458, 461 (1998). The trial court has the discretion to decide whether or not to grant a request for a new trial. *Id.* Under the law of this Commonwealth, a jury hearing a personal injury case cannot disregard the uncontroverted testimony from both parties' experts that the plaintiff was injured as a result of the accident in question. *Mano v. Madden,* 738 A.2d 493, 497 (Pa. Super. 1999); see *Neison v. Hines,* 539 Pa. 516, 653 A.2d 634 (1995); *Todd v. Bercini,* 371 Pa. 605, 92 A.2d 538 (1952); *Burnhauser v. Bumberger,* 745 A.2d 1256 (Pa. Super. 2000); *Lewis v. Evans,* 456 Pa. Super. 285, 690 A.2d 291 (1997); *Rozanc v. Urbany,* 444 Pa. Super. 645, 664 A.2d 619 (1995); *Hawley v. Donahoo,* 416 Pa. Super. 469, 611 A.2d 311 (1992).

The facts in *Burnhauser v. Bumberger* are similar to those in the instant case. In *Burnhauser,* the plaintiff was driving along Route 209 in Carbon County when the defendant's car crossed the center line and collided head-on with her. Ms. Burnhauser was taken to the hospital, where she complained of pain in her back, chest, shoulders, neck, arms and legs. At the trial, both parties' experts agreed that Ms. Burnhauser had sustained soft tissue injuries to her spine as a result of the accident. They disagreed, however, as to the nature and extent of these injuries. After the jury found in favor of the plaintiff but only awarded her damages equal to her unreimbursed medical expenses, the trial court granted her post-trial motion for a new trial on the issue of damages. The Superior Court then upheld this decision on appeal, hold-

ing that "jury verdicts awarding zero damages are against the weight of the evidence where undisputed medical evidence reveals that the plaintiff has suffered injuries in the accident that were of a type normally associated with pain and suffering." The Superior Court went on to find that since both parties' experts had agreed that Ms. Burnhauser had suffered injuries of this type, the trial court did not abuse its discretion or commit an error of law in granting a new trial. *Burnhauser,* 745 A.2d 1256.

In the instant case, defendant Jackson stipulated at trial that she was negligent in the operation of her car and that this negligence was the cause of the accident. More importantly, as in *Burnhauser,* in this case both parties' experts agree that plaintiff's back was injured in the accident. Plaintiff's expert, Dr. Mingroni, testified that in his opinion, plaintiff's chronic pain was directly caused by the accident on December 10, 1994. Transcript of Dr. Mingroni, pp. 25, 27. At the same time, defendant's expert, Dr. Shipkin, testified to the following:

"Well, I think at the time of his accident in December of 1994, December 10, he (plaintiff) suffered what I would term mild cervical strain and sprain, that is to say he—it's kind of like having a—a mild whiplash injury, if you will, and that was really all he suffered, as far as I was concerned." Transcript of Dr. Shipkin, p. 21, ll. 9-14.

Dr. Shipkin also acknowledged that even if plaintiff's disc was herniated prior to the accident, it could have been asymptomatic until the accident triggered the onset of plaintiff's symptoms. *Id.* at 30, 32. Since there was uncontroverted evidence that plaintiff was injured in the accident and that these injuries were the type one normally associates with pain and suffering, the jury's refusal to award any damages to plaintiff "shocks one's

sense of justice," and thus, the granting of a new trial is warranted. *Burnhauser,* 745 A.2d at 1261; see also, *Neison,* 539 Pa. at 520, 653 A.2d at 636; *Mano,* 738 A.2d at 495; *Rozanc,* 444 Pa. Super. at 651, 664 A.2d at 622.

In Pennsylvania, a court can limit a new trial to the issue of damages where: (1) the issue of liability has been fairly determined or is free from doubt and (2) where the issue of liability is not intertwined with the issue of damages. *Kiser v. Schulte,* 538 Pa. 219, 233, 648 A.2d 1, 8 (1994). In this case, there is no question whether or not defendant is liable, since she stipulated to her negligence at trial, and both medical experts argued that the accident had harmed plaintiff. Furthermore, the issue of liability is not intertwined with damages. Liability involves defendant's conduct driving her car which led to the accident occurring, while the issue of damages involves the question of whether or not plaintiff had an asymptomatic back injury prior to the accident. Clearly, these are two distinct questions. Therefore, the grant of a new trial can and should be limited to the issue of damages only.

## 2. JUDGMENT N.O.V.

In *Moure v. Raeuchle,* the Pennsylvania Supreme Court held the following, regarding the granting of a judgment n.o.v.:

"In reviewing a motion for judgment n.o.v., 'the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor.' . . . Moreover, [a] judgment n.o.v. should only be entered in a clear case and any doubts must be resolved

in favor of the verdict winner. . . . Further, 'a judge's appraisement of evidence is not to be based on how he would have voted had he been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations. . . .'

"There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, . . . and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. . . . With the first a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure." 529 Pa. 394, 402-403, 604 A.2d 1003, 1007 (1992) (citations omitted); see also, *Boutte v. Seitchik,* 719 A.2d 319 (Pa. Super. 1998).

Under this holding, we must decline to grant a judgment n.o.v. to plaintiff. As stated in the previous section, the fact that defendant stipulated at trial to negligence and that her expert admitted that plaintiff was injured in the accident, only means that plaintiff is owed some compensation for the injuries he sustained in the accident. Defendant's expert, Dr. Shipkin, although admitting that plaintiff was injured in the accident, testified that plaintiff suffered from a degenerative problem in his back prior to the accident and that this, and not the accident, was the primary cause of plaintiff's ongoing back problems. Transcript of Dr. Shipkin, pp. 21-22, 29-31. Under these facts, plaintiff is not owed all the damages he asked for as a matter of law, nor is the evidence

on damages such that no two reasonable minds could disagree on what the damages are. A new trial is necessary to determine what damages are attributable to defendant's negligence and what damages are attributable to any pre-existing conditions plaintiff might have had prior to the accident. Therefore, it would be an abuse of this court's discretion to grant a judgment n.o.v. and arbitrarily decide what compensation is owed to plaintiff.

At trial, defendant stipulated to negligence, and the fact that plaintiff was injured in the accident was uncontroverted. Therefore, the jury's decision that there was no causation did not bear a reasonable relation to the facts. For this reason, we enter our order of May 5, 2000, granting plaintiff's request for a new trial on the issue of damages only.

## ORDER

And now, May 5, 2000, upon consideration of plaintiff's motion for post-trial relief, defendant's response thereto, and their respective memoranda of law, it is hereby ordered and decreed as follows:

Plaintiff's request for a new trial is granted on the issue of damages only;

Plaintiff's request for a judgment n.o.v. is denied.