## Nudge v. Geiger

*Roy A. Manwaring II,* for plaintiff.
*Jody A. Mooney,* for defendant.

JOHNSON, *J.,* December 21, 2005—Before the court for consideration is the plaintiff's motion for post-trial relief filed by the plaintiff on July 21, 2005, as amended on August 30, 2005.[1]

## I. PROCEDURAL AND FACTUAL HISTORY

The plaintiff was involved in a motor vehicle accident that occurred on January 11, 2002 (the first accident), just four days prior to the January 15, 2002 motor vehicle accident that is the subject of this case (the subject accident). (N.T. July 14, 2005, at p. 50.) The first accident involved an unknown driver and the plaintiff alleged that she sustained physical injuries as a result of it. (N.T. July 14, 2005, at pp. 51-52.)

In addition, the plaintiff was involved in a third motor vehicle accident that occurred only minutes after the subject accident when she moved her motor vehicle to the other side of the street after the subject accident and was then struck by another motor vehicle (the third accident). (N.T. July 14, 2005, at pp. 62-64.) The plaintiff does not

---

1. On December 14, 2005, the court granted the motion of defendant, Heather Geiger, for reconsideration of order of court dated November 15, 2005 filed by the defendant on November 28, 2005.

recall if she exchanged information with the driver in the third accident. (N.T. July 14, 2005, at p. 64.)

The plaintiff filed a complaint against the defendant alleging negligence arising out of the subject accident. The plaintiff claims that she sustained injuries to her back and thoracic spine as a result of the subject accident.

A jury trial was held on this matter on July 14-15, 2005. The defendant stipulated to liability for the accident.

The court instructed the jury, in conformity with the Pennsylvania Suggested Standard Jury Instructions (PSSJI), that: they were to decide "what injury, if any, did the plaintiff sustain that was caused by the accident" (N.T. July 14, 2005, at p. 28; PSSJI); that "a witness who was false in one part of his or her testimony may be distrusted in others" (N.T. July 15, 2005, at p. 152; PSSJI); that they were entitled to accept or reject the testimony of the experts (N.T. July 15, 2005, at p. 155; PSSJI); that the opinion of an expert only has value when the jury accepts the facts on which it is based (N.T. July 15, 2005, at p. 155; PSSJI); and that the jury needed to evaluate the facts relied upon by the expert when examining the expert's opinion (N.T. July 15, 2005, at pp. 155-56; PSSJI). The plaintiff did not object to any of the jury instructions given to the jury in this matter. (N.T. July 15, 2005, at p. 173.)

The first question on the verdict slip was, "[w]as the negligence of the defendant a factual cause in bringing harm to the plaintiff?" (N.T. July 15, 2005, at p. 166.) The plaintiff never objected to the verdict slip or to the jury being asked to decide the issue of causation. (N.T. July 15, 2005, at pp. 138-39, 166, 173.)

After deliberation, the jury returned a verdict on behalf of the defendant, finding that none of the plaintiff's injuries were caused by the defendant's negligence.

The plaintiff filed a motion for post-trial relief on July 21, 2005, as amended on August 30, 2005. Procedurally, the plaintiff's July 21, 2005 motion was defective. The plaintiff failed to identify any portions of the record to be transcribed. Pennsylvania Rule of Civil Procedure 227.3 provides that: "all post-trial motions shall contain a request that a portion of the record be transcribed in order to enable the court to dispose of the motion . . . . If no portion is indicated, the transcription of the record shall be deemed unnecessary to the disposition of the motion."

However, the plaintiff amended the July 21, 2005 motion on August 30, 2005, and requested that portions of the record be transcribed, as her motion could not be decided without reviewing the record. Although August 30, 2005, was beyond the 30-day deadline for the filing of a post-trial motion in this case, Pa.R.C.P. 126 gives the court the discretion to "disregard any error or defect of procedure which does not affect the substantial rights of the parties." Additionally, the law favors deciding cases and issues on their merits, rather than on procedural deficiencies. Therefore, because the plaintiff amended her motion only to request the transcription of a portion of the record, the court exercised its discretion to decide that motion on substantive grounds rather than to dismiss it for this particular procedural deficiency. On November 15, 2005, the court granted the plaintiff's motion for post-trial relief and ordered a new trial on the issue of damages only.

On November 28, 2005, the defendant filed the motion of defendant Heather Geiger for reconsideration of order of court dated November 15, 2005. The plaintiff responded thereto on December 8, 2005. On December 14, 2005, the court granted said motion for reconsideration in a footnoted order that advised the parties that the court would reconsider the plaintiff's motion for post-trial relief filed on July 21, 2005. In considering the defendant's motion for reconsideration, the court made a further review of the applicable case law and determined that a deeper analysis of the issue than it had performed originally was warranted.

## II. PARTIES' ARGUMENTS

The plaintiff argues that because the three expert witnesses who testified in this case agree that the plaintiff sustained a large disc protrusion at T10-11 as a direct and proximate result of the defendant's negligence, the jury erred as a matter of law in failing to find that the negligence of the defendant was a factual cause in bringing about any harm to the plaintiff, as such a finding was against the weight of the evidence.

The defendant argues that, because the experts based their opinions, in part, on subjective information provided by the plaintiff, the jury was free to disregard the expert testimony if it did not find the plaintiff credible.

## III. APPLICABLE LAW

The decision whether to grant a new trial lies within the sound discretion of the trial court. *Clark v. Philadelphia College of Osteopathic Medicine,* 693 A.2d 202,

204 (Pa. Super. 1997). "A new trial should be granted if the judge finds that an injustice has been done." *Colosimo v. Pennsylvania Electric Company,* 513 Pa. 155, 163, 518 A.2d 1206, 1210 (1986). A court has a duty to grant a new trial if it determines that the judicial process has effected a serious injustice, as where there has been an error of law or where the verdict is against the clear weight of the evidence. *Austin v. Ridge,* 435 Pa. 1, 5-6, 255 A.2d 123, 125 (1969).

"Where there is no dispute that the defendant is negligent and both parties' medical experts agree the accident caused some injury to the plaintiff, the jury may not find the defendant's negligence was not a substantial factor in bringing about at least some of the plaintiff's injuries . . . . Such a verdict is contrary to the weight of the evidence adduced at trial." *Andrews v. Jackson,* 800 A.2d 959, 962 (Pa. Super. 2002). (citations omitted)

However, applicable Pennsylvania law also provides that a jury, as the finder of fact, is entitled to believe all, some or none of the evidence presented. *Martin v. Evans,* 551 Pa. 496, 505, 711 A.2d 458, 463 (1998). Importantly, if a jury disbelieves the facts on which an expert's opinions were made, the jury is free to disregard that testimony. *Commonwealth v. Rounds,* 518 Pa. 204, 209, 542 A.2d 997, 999 (1988).

## IV. ANALYSIS OF THE CASE AT BAR

### a. *The Plaintiff*

In the case at bar, exactly which of the three accidents caused which injuries and the plaintiff's credibility came

into question. During direct examination, the plaintiff was asked to describe her health prior to the first accident. (N.T. July 14, 2005, at p. 48.) The plaintiff testified, as follows:

"I had perfect health prior to the accidents. I was going to the gym approximately four times a week, lifting weights, doing aerobics, doing a lot of cardiographic [sic] activity. Elliptical runner. All of that." (N.T. July 14, 2005, at p. 48.)

The plaintiff further testified that she had physical restrictions and problems as a result of the first accident, which are completely unrelated to the claim brought against the defendant. (N.T. July 14, 2005, at pp. 52-53.)

During direct examination, the plaintiff told the jury that she sustained injuries to her neck, right shoulder and right arm due to the first accident. (N.T. July 14, 2005, at p. 52.) On cross-examination, the plaintiff conceded that, in prior deposition testimony, she acknowledged that she also had pain in her upper back as a result of the first accident. (N.T. July 14, 2005, at pp. 79-80.) Additionally, the plaintiff testified that, at the time of the trial in this matter, she did not consider herself fully recovered from the injuries she sustained in the first accident. (N.T. July 14, 2005, at p. 73.)

At the trial in this matter, the plaintiff testified that she cannot hike or ski, and she requires assistance from her family with carrying things, due to the subject accident. (N.T. July 14, 2005, at p. 75.) However, she then was impeached with sworn deposition testimony she gave in January 2004. In the January 2004 deposition, the plaintiff was asked, "Now with regards to any injuries that

you attribute to the first accident [first accident] as opposed to the second accident [subject accident], what impact has that had on your daily activities?" (N.T. July 14, 2005, at p. 106.) In response, the plaintiff stated that she used to hike, ski and play with her children, but that all of these activities were severely limited as a result of the first accident. (N.T. July 14, 2005, at pp. 105-106.)

Finally, although the plaintiff had denied any prior medical treatment to her back and/or thoracic area on direct examination, on cross-examination, she testified that she had prior back treatment due to a broken tailbone and an injury when she was knocked down by some running children (unrelated to any of the three accidents), although it was not to the thoracic disc. (N.T. July 14, 2005, at pp. 49 and 98.)

Clearly, portions of the plaintiff's testimony, such as these examples, could have called the plaintiff's credibility into question in the minds of the jurors. Therefore, if the jury decided not to believe the plaintiff, and if the experts based their conclusions on her subjective statements, under Pennsylvania law, the jury was free to disregard the experts' conclusions.

### b. *The Experts*

In the case at bar, each of the three expert witnesses presented testified, within a reasonable degree of medical or chiropractic certainty, that the subject accident was the cause of the plaintiff's herniated disc protrusion at T10-11. However, each of the experts relied, at least in part, on subjective information provided by the plaintiff.

The plaintiff's expert witness, Chiropractor Mary Rutkowksi, testified that, based on *the history she obtained from the plaintiff,* her physical examination of the plaintiff, her review of Dr. Mauthe's medical records and after reviewing various reports and diagnostic studies that were performed on the plaintiff, the plaintiff suffered from a herniated disc at T10-11 as a result of the subject accident. (N.T. July 14, 2005 at p. 149.) (emphasis added)

Additionally, the plaintiff's second expert witness, Dr. Robert W. Mauthe, testified that, based on *the history he took,* his review of the plaintiff's medical records, his examinations of the plaintiff over a two-year period, his review of diagnostic studies, and taking into account the plaintiff's past history, the plaintiff suffered a protrusion of the disc at T10-11 as a direct result of the trauma she sustained from the subject accident. (N.T. July 15, 2005, at pp. 16-17.) (emphasis added)

Finally, and most importantly, the defendant's expert witness, Dr. Barry Berger, testified that *after listening to the plaintiff's subjective complaints,* his physical examination of the plaintiff, his review of MRI films and all medical records, the plaintiff most likely suffered from her disc protrusion at T10-11 due to the subject accident and he felt the T10-11 disc protrusion probably was in part responsible for the complaints of pain the plaintiff had following the subject accident. (N.T. July 15, 2005, at p. 103.) (emphasis added)

Dr. Berger testified, for example, that, "[t]he initial portion of the time we spent together was a history, in which I asked Ms. Nudge, to the best of her ability, [to] recall the events which led to her being in my office that

day." (N.T. July 15, 2005, at p. 87.) Dr. Berger later confirmed that his opinion was based in part on listening to the plaintiff's subjective complaints. (N.T. July 15, 2005, at p. 103.)

The plaintiff advised Dr. Berger that she was in shock over the trauma of the two motor vehicle accidents that had occurred on January 15, 2002 (the subject accident and the third accident); however, she attributed the pain she experienced more to the subject accident rather than to the third accident, which happened only minutes later when she moved her vehicle to the other side of the street after the subject accident and she was struck by another vehicle. (N.T. July 15, 2005, at pp. 90, 91-92.) Importantly, Dr. Berger was asked if he was able to determine whether the plaintiff sustained injuries in the third accident. Dr. Berger testified that it was not clear whether the plaintiff could have sustained some of the injuries she alleges were caused by the subject accident as a result of the third accident as follows:

"Again, I don't know. It was hard for me to glean from her just, you know, what exactly transpired. It was only a few minutes between accidents . . . ." (N.T., July 15, 2005, at p. 103.)

The testimony of all three of the experts, including, significantly, that of the defense expert, Dr. Berger, demonstrates that each of them relied on subjective information provided by the plaintiff in reaching their conclusions.

## V. CONCLUSION

Therefore, the court finds that, although all three experts opine that the plaintiff probably suffered some in-

jury from the subject accident, because the jury was free to disbelieve any or all of the experts' opinions if it did not believe the facts on which those opinions were based, the verdict is not against the clear weight of the evidence and, therefore, plaintiff's motion for post-trial relief is denied.

## ORDER

And now, December 21, 2005, upon consideration of the plaintiff's motion for post-trial relief filed on July 21, 2005, and the plaintiff's amended motion for post-trial relief filed on August 30, 2005, and the defendant's responses thereto and after argument, it is hereby ordered that the plaintiff's motion for post-trial relief filed on July 21, 2005, and as amended August 30, 2005, is hereby denied for the reasons set forth in the accompanying opinion.