**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4397
_____

THE ESTATE OF MICHEAL KEATING BY MARIE KEATING, the Executrix
of THE ESTATE of Michael Keating; MARIE KEATING, in her own right, and as
executrix of such estate; MARIE KEATING for and on behalf of the heirs of
Estate of Michael Keating,

v.

COATESVILLE VA MEDICAL CENTER; THE U.S. DEPARTMENT OF
VETERAN AFFAIRS, a/k/a The Veterans Administration; and
UNITED STATES OF AMERICA

MARIE KEATING; *ASHLEY KEATING; and *MICHEAL KEATING,
Appellants
*(Pursuant to Fed R. App. 12(a))
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 10-CV-02672)
District Judge:  Honorable Timothy J. Savage
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 25, 2012
Before: RENDELL, FUENTES and WEIS, <u>Circuit</u> <u>Judges</u>

(Opinion filed: August 3, 2012)

_____

OPINION
_____

PER CURIAM.

The widow and two adult children of Michael Keating appeal, pro se, from the District Court's judgment in favor of the United States of America on their claims of negligence and wrongful death brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. (FTCA). For the reasons set forth below, we will affirm.

**I.**

Because we write primarily for the parties, we recite only the facts essential to our disposition of this appeal.

This case involves the events on June 5 and 6, 2008, which culminated in the tragic and unfortunate death of Michael Keating, a Vietnam veteran. During the time in question, Mr. Keating resided at the Coatesville Veterans Administration Medical Center (the "Coatesville VA"). He had been admitted in April of that year for treatment for post-traumatic stress disorder (PSTD). The Coatesville VA is a tertiary psychiatric facility, not a typical hospital. Among other things, it does not have an emergency room or perform surgery. It does, however, have an urgent care unit and a 35-bed medical floor. The Coatesville VA also includes

2

transitional housing units, such as the domiciliary floor that Mr. Keating resided on with other veterans while undergoing treatment for PSTD. In addition to PSTD, Mr. Keating also suffered from chronic obstructive pulmonary disease (COPD), with which he had had been diagnosed in September 2003. On several occasions prior to his admission to the Coatesville VA, Mr. Keating visited emergency rooms in response to breathing problems.

During the morning June 5, Mr. Keating experienced difficulty breathing. A physician assistant working on Mr. Keating's domiciliary floor issued a "code blue," which at the Coatesville VA includes any emergency, not just cardiac or respiratory arrest. The code blue response team first treated Mr. Keating in the domiciliary unit, then took him for a chest x-ray, and then took him to the urgent care unit where he received further treatment. Mr. Keating spent a little more than two hours in the urgent care unit, during which time his condition improved with treatment. He was discharged around 1:40 p.m. and walked back to the domiciliary unit under his own power.

Once back at the domiciliary unit, Mr. Keating was seen by two nurses, at 2:51 p.m. and 3:44 p.m., who checked his vital signs and told him to report any changes in his condition to staff. A health technician, Frank Hamilton, who was assigned to work on Mr. Keating's domiciliary floor performed hourly rounds after

3

midnight. Around midnight, Mr. Hamilton documented that Mr. Keating was in bed, asleep, and breathing. At around 1 a.m., he noted that Mr. Keating was awake in bed, but not in any apparent distress.

At approximately 1:40 a.m., a resident in an adjacent room heard that Mr. Keating was in distress and alerted Mr. Hamilton, who was in a dayroom on the other end of the floor. Mr. Hamilton went to Mr. Keating's room, then made a code blue call, returned to Mr. Keating's room, and then went to make a follow-up code blue call. The code response team arrived soon thereafter to find Mr. Keating unresponsive and cyanotic. After the doctor who was part of the code response team performed CPR, Mr. Keating had improved color and an improved pulse, but he did not regain consciousness. Mr. Keating was also given oxygen by a bag valve mask. He was then transferred by ambulance to nearby Brandywine Hospital. Mr. Keating never regained consciousness and ultimately died several months later.

Appellants instituted this action under the FTCA, claiming that the Coatesville VA and its employees were negligent in their treatment of Mr. Keating on June 5 and 6, 2008. After a three-day bench trial, during which Appellants were represented by counsel, the District Court issued findings of fact and conclusions of law in which it found that neither the Coatesville VA nor any of its

4

employees breached any duty of care owed to Mr. Keating. Accordingly, the District Court entered judgment in favor of the United States. Appellants timely appealed.

## II.

The District Court had jurisdiction under the FTCA pursuant to 28 U.S.C § 1346(b). We have jurisdiction over this appeal from the final judgment of the District Court pursuant to 28 U.S.C. § 1291.

After a bench trial, we review the District Court's factual findings for clear error only. Am. Soc'y for Testing & Materials v. Corrpro Cos., 478 F.3d 557, 566 (3d Cir. 2007); Fed. R. Civ. P. 52(a)(6). This standard does not entitle a reviewing court to reverse the finding of the trier of fact "simply because it is convinced that it would have decided the case differently." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985). Rather, we may reverse a finding of fact only if it is "devoid of a credible evidentiary basis or bears no rational relationship to the supporting data." Shire US Inc. v. Barr Labs., Inc., 329 F.3d 348, 352 (3d Cir. 2003). We exercise plenary review over the District Court's conclusions of law. Kosiba v. Merck & Co., 384 F.3d 58, 64 (3d Cir. 2004). When "we are confronted with mixed questions of fact and law, we apply the clearly erroneous standard except that the District Court's choice and interpretation of legal precepts remain

subject to plenary review." Gordon v. Lewistown Hosp., 423 F.3d 184, 201 (3d Cir. 2005).

**III.**

The FTCA provides a limited waiver of the United States' sovereign immunity, subjecting the United States to liability for the torts of federal employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); see In re Orthopedic Bone Screw Prod. Liab. Litig., 264 F.3d 344, 361-62 (3d Cir. 2001). Liability under the FTCA is determined by applying the substantive law of the state in which the injury occurred, DeJesus v. U.S. Dep't of Veterans Affairs, 479 F.3d 271, 279 (3d Cir. 2007), which in this instance is Pennsylvania.

In order to recover on a negligence theory under Pennsylvania law, a plaintiff must prove that: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach caused the plaintiff's injury; and (4) the plaintiff suffered damages. Martin v. Evans, 711 A.2d 458, 461 (Pa. 1998). Medical malpractice claims adhere to these four basic elements, but the plaintiff is "also required to present an expert witness who will testify, to a reasonable degree

6

of medical certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered." Mitzefelt v. Kamrin, 584 A.2d 888, 892 (Pa. 1990).

In its comprehensive findings of fact and conclusions of law, the District Court determined that the conduct of the Coatesville VA and its employees satisfied the standard of care and that Appellants failed to prove that any act or omission on the part of the Coatesville VA or its employees increased the risk of harm or was the factual cause of Mr. Keating's injuries or death. After careful review of the record and consideration of the parties' arguments, we conclude that the District Court's findings were supported by the record and were not clearly erroneous.

Appellants first argue that the Coatesville VA breached the duty of care by discharging Mr. Keating back to the domiciliary from the urgent care unit. They highlight testimony of the physician assistant in the urgent care unit, which they contend suggests that the decision not to send Mr. Keating to either the medical ward of the Coatesville VA or a hospital was because it would involve too much effort or paperwork. At trial, Appellants' medical expert, Dr. Cohen, opined that the Coatesville VA failed to meet the standard of care when it discharged Mr. Keating back to the domiciliary because, in Dr. Cohen's opinion, he required

7

ongoing monitoring. The United States' medical expert, Dr. Kane, testified to the contrary that, taking into consideration the fact that his condition had improved, the decision to discharge Mr. Keating from urgent care back to the domiciliary did satisfy the standard of care and that, in any event, he was monitored when he returned to the domiciliary. The District Court ultimately agreed with the Dr. Kane. Although Appellants' expert offered a different opinion, when there is a battle between reasonable but conflicting expert opinions, the factfinder's choice between them is not clearly erroneous. Lansford-Coaldale Joint Water Auth. v. Tonolli Corp., 4 F.3d 1209, 1216 (3d Cir. 1993).[1] Accordingly, there is no basis to disturb the District Court's judgment on this ground.

Appellants also raise on appeal their contention that the Coatesville VA health technician, Mr. Hamilton, waited too long before making a follow-up code blue call after discovering that Mr. Keating was in distress, delaying the code response team. Although the parties offer differing interpretations of Mr. Hamilton's testimony, the District Court's factual finding that the code blue team arrived approximately three minutes after Mr. Hamilton's initial code blue call is

---

[1] Dr. Cohen also opined at trial that the code blue response team's use of a bag valve mask to provide Mr. Keating oxygen rather than intubation did not meet the standard of care. On appeal, Appellants appear to have largely abandoned their argument concerning the use of bag valve ventilation versus intubation, and, in any event, we find nothing in the record that would require us to conclude that the District Court erred in finding that the Coatesville VA complied with standard of care in that regard.

adequately supported by the record. Moreover, Appellants have not identified any expert testimony or other evidence presented at trial that would compel the conclusion that any alleged delay by Mr. Hamilton in placing a follow-up code blue call caused Mr. Keating's injuries or ultimate death. The District Court found that Appellants failed to prove that any failure to act or delay in acting by the Coatesville VA or any of its employees increased the risk of harm to Mr. Keating, and Appellants have not shown that this finding was clearly erroneous.

After the deadline for filing their reply brief had lapsed, Appellants filed a motion for leave to file a supplemental appendix and a separate document titled Brief for Appellants, both of which were docketed as reply briefs. The United States filed a Motion to Strike Appellants' reply briefs. As Appellants are proceeding pro se and these briefs were filed soon after the deadline for filing a reply, we will deny the motion to strike and grant Appellants' motion for leave to file the reply briefs. We also grant them leave to file the briefs out of time. Although we have considered Appellants' reply briefs, issues raised for the first time therein are waived,[2] Gambino v. Morris, 134 F.3d 156, 161 n.10 (3d Cir.

---

[2] Even if Appellants' new arguments had not been waived, they would not lead us to conclude that the District Court's findings were clearly erroneous. The primary new argument Appellants raised in their replies is that Mr. Hamilton breached the standard of care by not performing CPR in the intervening minutes between when he made the code blue call and when the response team arrived. Among the deficiencies in this argument is

1998), and Appellants' remaining contentions simply point to additional record materials in support of the arguments we disposed of above, none of which alters our conclusion that the District Court's factual findings were not clearly erroneous.

## IV.

In conclusion, we will affirm the judgment of the District Court in all respects. Appellants' Motion for Leave to File a Supplemental Appendix, which we understand to seek leave to file two reply briefs out of time, is granted. The Government's Motion to Strike Appellants' Reply Briefs is denied. Appellants' motion requesting a waiver of all fees and costs is granted only insofar as to require each party to bear only its own costs.

---

Appellants' failure to point to any record evidence establishing causation with regard to this alleged breach.