J-A27022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DONNA ZIELKE AND JOSEPH ZIELKE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JAMES MULLEN, III, AND LINDA MULLEN | |
| APPEAL OF: DONNA ZIELKE | No. 3174 EDA 2015 |

Appeal from the Order September 3, 2015
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 11-006646

BEFORE: PANELLA, J., LAZARUS, J., and FITZGERALD, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED DECEMBER 21, 2016**

Donna Zielke appeals from the order, entered in the Court of Common Pleas of Delaware County, denying her post-trial motion seeking a new trial or, in the alternative, additur. After our review, we reverse and remand for a new trial limited to non-economic damages.

The trial court set forth the factual history as follows:

On September 9, 2009, Appellant/Plaintiff, Donna Zielke, and her husband, Joseph Zielke, were at the home of Appellees/Defendants, James and Linda Mullen ["the Mullens"], attending the wedding ceremony and reception for Donna Zielke's stepdaughter. The home[,] located at 308 West Rose Tree Road in Media, Delaware County, Pennsylvania, is a single family, split-level residence. While descending to the lower level of the home, Donna Zielke (hereinafter "Zielke") lost her balance on the second step of five steps and fell down to the lower level. Zielke sought treatment for her injuries, principally her left foot,

---

[*] Former Justice specially assigned to the Superior Court.

but also claims injuries to her head, neck, spine, wrists, and elbows. Zielke was already suffering from several pre-existing injuries and medical conditions at the time of [the] 2009 incident. In 1998, she sustained a herniated disc and required a spinal fusion. . . . Zielke also suffers from carpel tunnel syndrome and underwent surgery to treat this condition. Zielke confirmed for the jury that the Social Security Administration has found her disabled as a result of the bilateral carpel tunnel syndrome, the neck fusion, and the low back herniation.

Trial Court Opinion, 12/21/15, at 2-3.[1]

At trial, the evidence established that the Mullens, while preparing to host a wedding reception, had removed a handrail in order to paint. The stairway, which led down to the family room, consisted of five steps. The Mullens planned to hold the wedding reception for approximately thirty guests in the downstairs family room. James Mullen testified that he had neglected to put the handrail back up before the reception. N.T. Jury Trial, 7/27/15, at 99-100.

Zielke testified that on September 9, 2009, the day of the wedding, she descended the stairway to the family room; on the second step, she started to lose her balance and reached out to grab the handrail for support. Having no handrail to grab for support, Zielke fell on her back, hitting her head on each step, and slid down the steps. *Id.* at 117.[2]

---

[1] We note that the trial court's opinion is incorrectly time-stamped "2005 Dec 21."

[2] The court admitted the expert report of engineer Daniel Honig, on behalf of Zielke, following his site report of the subject stairway at the Mullen residence. The report provides, in relevant part:
*(Footnote Continued Next Page)*

As a result of the fall, Zielke fractured a bone in her left foot in several places. The injury required surgery and removal of the bone. After removal of her recuperative "boot," which she wore for a total of "seven or eight months[,]" Zielke suffered recurrent blistering caused by pressure on the bone next to the one that had been removed. *Id.* at 121-33. Zielke

_____
*(Footnote Continued)* ——————————

> In addition to the unusually steep configuration of this residential stairwell, my site inspection and review of the photographs confirmed that the dimensioning of the uppermost tread and riser elements varied significantly from the similar elements throughout the remainder of the stair. Most importantly, these dimensional discrepancies were located at the top portion of the stair, which would be the initial access area upon descent. Given that the height of the top riser was less than the remainder and the uppermost read was deeper than the remainder, a person accessing the stair from the top would initially be provided with a false sense of security. This is consistent with the description and mechanics of Ms. Zielke's fall as described in her deposition testimony. Accordingly, according to Ms. Zielke, the initial step down from the top 8 and ½" riser onto the 10" tread with her right foot, as Ms. Zielke attempted to step down to the next tread with her left foot, the increased 9" height and the reduced 9" riser depth of the tread did not allow her to place this foot fully on the tread due to the significant step down and the position of her foot only halfway on the tread. Ms. Zielke's foot easily slipped off the nosing of the carpeted tread, thereby causing her to fall. All of the tread and riser elements have been constructed prior to Mr. and Mrs. Mullen's purchase of the home, the finished detailing of the stairway was altered by the installation of new carpeting shortly prior to the incident. More importantly, the existing original handrail had been removed, but was not properly reinstalled prior to Ms. Zielke's fall as described in detail.

N.T. Jury Trial, 7/28/15, at 51-53.

testified that after the accident, she was working from 3:00 pm to 9:00 pm two or three days a week as she had found a part-time job that did not require either continual standing or continual sitting. However, post-surgery she had missed 160 hours of work because she was required to be on bedrest for 60-90 days. *Id.* at 127-133.[3]

Following a three-day trial, the jury returned a verdict in favor of Zielke. The jury found the Mullens were negligent and that their negligence was a factual cause of Zielke's injuries. The jury awarded Zielke $13,138.34 in damages for past and future medical expenses[4] and lost earnings; the

_____

[3] Zielke testified that in 1998, while working as a nurse, she suffered herniated discs in her neck and low back when, as she attempted to lift a patient into bed, the patient kicked back. Her injuries required a spinal fusion. N.T. Trial, 7/27/15, at 110. Zielke was on disability, but accepted a part-time job as a receptionist at a tennis club, which was to start two days after her fall at the Mullens' home.

[4] Frank Adamo, D.P.M., who performed Zielke's surgery and treated her from 2009 to 2013, diagnosed Zielke with metatarsalgia of the left great toe joint with tibial sesamoiditis. His report, read into the record at trial, provided, in part:

> The tibial sesamoid bone remains a pressure point after surgical resection of fibular sesamoid. The cause of her chronic impairment is directly related to the injury that she sustained. I can say with a reasonable degree of medical certainty that her injury has caused permanent impairment due to transfer metatarsalgia to the tibial sesamoid and the prognosis is only fair at best. . . . Future medical expenses could be upwards of $25,000 of medical coverage if patient needed to undergo a tibial sesmoidectomy or any other procedure of the great toe joint.

*(Footnote Continued Next Page)*

jury awarded zero damages for non-economic loss (pain and suffering, embarrassment/humiliation, loss of life's pleasures, and disfigurement).

Zielke filed a motion for post-trial relief in the form of additur or, in the alternative, a new trial limited to the issue of non-economic loss. The trial court denied Zielke's motion. This appeal followed.

Zielke raises three issues for our review:

1. Whether a jury's verdict awarding zero damages for non-economic loss is against the clear weight of the evidence where the jury found that [Zielke] endured significant injuries due to [the Mullens'] negligence; there was uncontroverted evidence that [Zielke's] injuries were "of the type that naturally and normally cause pain and suffering" and did in fact cause [Zielke] to suffer such non-economic damages, "and, accordingly, the jury was not free to disregard them[.]"

2. Whether the trial judge erred as a matter of law in denying [Zielke's] motion for post trial relief because the trial court had no reasonable basis to believe that either (1) the jury did not believe [Zielke] suffered any pain and suffering, or (2) that a preexisting condition or injury was the sole cause of the alleged pain and suffering[.]

3. Whether the trial judge erred as a matter of law in denying [Zielke's] motion for post-trial relief by failing to grant judicial additur or a new trial limited to the issue of non-economic loss damages, where the jury's verdict was

_(Footnote Continued)_ ——————————

N.T. Jury Trial, 7/28/15, at 56-59. We note that the Mullens' medical expert did not dispute the nature or extent of Zielke's injuries, but instead opined that they were just as likely caused by Zielke's husband stepping on her foot after she landed from her fall, as by her fall down the steps. **See** N.T. 7/28/15, at 99. In light of the jury's verdict slip specifically finding the Mullens were negligent and their negligence was a factual cause of Zielke's injuries, we find this inconsequential. **See** Verdict Slip, 7/29/15, at 1-2.

clearly inadequate and against the weight of the
evidence[.]

Appellant's Brief, at 4.

The decision to grant a new trial lies within the discretion of the trial court. *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998). We will not reverse a trial court's decision absent an abuse of discretion, *Davis v. Mullen*, 773 A.2d 764, 766 (Pa. 2001), or an error of law. *Yacoub v. Lehigh Valley Medical Associates*, 805 A.2d 579, 586 (Pa. Super. 2002) (en banc); *Andrews v. Jackson*, 800 A.2d 959, 962 (Pa. Super. 2002). An abuse of discretion occurs "when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will." *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1123 (Pa. 2000) (citing **Coker v. S.M. Flickinger Company, Inc**., 625 A.2d 1181, 1185 (Pa. 1993)).

A new trial for damages should be awarded "where it clearly appears from the uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff[.]" *Kiser v. Schulte*, 648 A.2d 1, 3-4 (Pa. 1994). *See Neison v. Hines*, 653 A.2d 634, 636 (Pa. 1995); *Zeigler v. Detweiler*, 835 A.2d 764, 767 (Pa. Super. 2003); *Lombardo v. DeLeon*, 828 A.2d 372, 374 (Pa. Super. 2003). "If the verdict bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgment for the jury's." *Kiser*, *supra* at 4. However, "where the injustice of the verdict `stands forth like a

beacon,' a court should not hesitate to find it inadequate and order a new trial." ***Id.*** Thus,

> a jury verdict is set aside for inadequacy when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff [and] is so contrary to the evidence as to "shock one's sense of justice."

***Davis***, 773 A.2d at 767, *citing* ***Kiser*** 648 A.2d at 4.

In ***Majczyk v. Oesch***, 789 A.2d 717 (Pa. Super. 2001) (en banc), this Court acknowledged that not all injuries are serious enough to merit compensation, holding that under the facts of that case it was not reversible error to award plaintiff zero damages for pain and suffering. There, the plaintiff claimed that she had suffered a herniated disc in a minor car accident, causing ongoing pain and suffering, and requiring surgery. Though experts on both sides conceded that plaintiff suffered some injury, the jury found in favor of the defendant, whose expert opined that plaintiff's herniated disc was not caused by the accident, and that the injury plaintiff did suffer in the accident was a mere "cervical strain." ***Id.*** at 720.

The ***Majczyk*** Court held that the jury may find for the defendant despite obvious negligence when it does not believe the plaintiff's pain and suffering, or that the plaintiff's injury is the sort that is compensable. Quoting ***Boggavarapu v. Ponist***, 542 A.2d 516, 518 (Pa. 1988), we stated that some injuries are the sort of "transient rub of life for which compensation is not warranted," ***Majczyk***, ***supra*** at 726, and that "the

determination of what is a compensable injury is uniquely within the purview of the jury." *Id.* We concluded that, based on the record, the jury properly found that plaintiff's accident-related injuries were minor, causing only a few days or weeks of discomfort, and not the sort that require compensation. *See also Davis*, *supra* (holding "a jury's award of medical expenses without compensation for pain and suffering should not be disturbed where the trial court had a reasonable basis to believe that: (1) the jury did not believe the plaintiff suffered any pain and suffering, or (2) that a preexisting condition or injury was the sole cause of the alleged pain and suffering.").

However, unlike *Majczyk*, where a minor rear end collision resulted in an injury that was not significant, the instant case involved a serious injury that required surgery, removal of a bone, scarring, months of bed rest, chronic blistering and continuing pain. The evidence is undisputed that due to the Mullens' negligence, Zielke fell and suffered serious injury, required surgery, and will likely require future surgeries.

We find this case more akin to *Burnhauser v. Bumberger*, 745 A.2d 1256 (Pa. Super. 2000). In *Burnhauser*, this Court concluded that the jury's award of zero dollars for pain and suffering bore no reasonable relationship to the loss suffered in a head-on collision, soft tissue injuries, and pain that lasted for 6 months. Here, like in *Burnhauser*, Zielke's injuries were of the type that objectively cause compensable pain, and, unlike in *Majczyk*, were not a mere "transient rub of life." *Boggavarapu*, *supra* at 518. Like in *Burnhauser*, the instant case involved more than a

- 8 -

minor accident and injury. In ***Burnhauser***, the jury's damages award matched exactly the amount of plaintiff's unreimbursed medical expenses. Here, the damages award matched Zielke's medical expenses ($9,378.34) and past lost earnings ($1,760.00), plus a $2,000 allowance for future medical expenses. Unlike the plaintiff in ***Majczyk***, Zielke suffered compensable injury; thus, we find ***Burnhauser*** controls.

Our Supreme Court has stated:

> [T]here are injuries to which human experience teaches there is accompanying pain. Those injuries are obvious in the most ordinary sense: the broken bone, the stretched muscle, twist of the skeletal system, injury to a nerve, organ or their function, and all the consequences of any injury traceable by medical science and common experience as sources of pain and suffering. Pain, of varying degree, may indeed follow small injury and be greater in its consequence than the initial blow. It may aggravate existing defects of the person, exploding latent diseases or precipitate, into present pain, what otherwise might have passed or been long delayed, absent the immediate injury.

***Boggavarapu***, 542 A.2d at 518. After our review of the record, we agree with Zielke's argument that the uncontroverted evidence established that her injuries were "of the type that naturally and normally cause pain and suffering[,]" ***Neison***, 653 A.2d at 639, and did in fact cause her to suffer non-economic damages. Accordingly, the jury was not free to disregard them. Because the jury's verdict clearly indicated an award only for past and future medical expenses and lost earnings, and because Zielke had suffered compensable injury, the jury's failure to make an award for pain and suffering bore no reasonable relationship to the loss suffered. ***See***

*Marsh v. Hanley*, 856 A.2d 138 (Pa. Super. 2004); *Burnhauser*, *supra*.

We therefore reverse the trial court's order denying a new trial on damages.

Order denying post-trial motions reversed. Matter remanded for a new trial on damages only. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/2016