# Liberchuk v. Nolte

C.P. of Bucks County, no. 02-08547-20-2.

*Bruce Martin Ginsburg,* for appellants.
*Kelly J. Fox,* for appellee.

GOLDBERG, *J.,* April 18, 2006—This case involves a personal injury suit brought by Roman and Anna Liberchuk stemming from a vehicle accident occurring on August 6, 2000. After a one-day trial, a jury awarded Roman Liberchuk $1,695.13 for economic damages and zero for noneconomic damages. The jury also declined to award Anna Liberchuk any compensation for non-economic damages.[1] The Liberchuks appeal this court's July 13, 2005 order denying their post-trial motions seeking a new trial on the issue of damages, or in the alternative, for additur.

In their concise statement of matters complained of on appeal, the Liberchuks raise one issue as follows:

"Plaintiffs' basis for the appeal is that the jury's award of zero for noneconomic damages, despite their finding plaintiff's injuries and medical bills were causally related to the accident, is inconsistent with the law of this Commonwealth."

This opinion is filed pursuant to Rule of Appellate Procedure 1925(a).

---

1. The jury did not consider economic damages for Anna Liberchuk because she did not present evidence to support such a claim. (N.T. 3/9/05, p. 113.)

## FACTUAL AND PROCEDURAL HISTORY

On August 6, 2000, at approximately 1:30 p.m., the Liberchuks were traveling south on Route One in Bensalem Township in their Chrysler minivan while defendant, Kenneth Nolte, was traveling north on Route One in a replica 1967 Cobra sports car. It was drizzling at the time and Nolte was speeding when, according to him, "the car started acting funny" and his vehicle collided into the guardrail dividing Route One. (N.T. 3/9/05, pp. 49, 102.) The impact caused portions of the fiberglass body of Nolte's vehicle to disintegrate and pieces went flying into the air, some into the southbound lanes of Route One where the Liberchuks' vehicle was approaching. Mr. Liberchuk tried to avoid the debris by jiggling the steering wheel to the right and left and then by jamming on the brakes. A chunk of metal, which Mr. Liberchuk believed to be a radiator, struck the front bumper and then passed underneath the van. After running over the metal, Mr. Liberchuk was able to bring his minivan to a stop on the shoulder of the road. (N.T. 3/9/05, pp. 7-8, 59-61.)

The police arrived shortly thereafter. Mrs. Liberchuk was unable to open the passenger-side door of the minivan because the hinge was jammed. Both Mr. and Mrs. Liberchuk testified that the door was jammed as a result of the accident, but on cross-examination, Mr. Liberchuk admitted that the repair bill for the car did not include any repairs to the passenger door that Mrs. Liberchuk was unable to open. (N.T. 3/9/05, p. 78.) A police officer assisted in opening the door and asked the Liberchuks if they required medical attention or an ambulance to take them to the emergency room. Both de-

clined, and Mr. Liberchuk was able to drive the minivan away from the scene. (N.T. 3/9/05, pp. 9-11, 24, 31, 62, 70, 77-78.)

Mr. Liberchuk testified that as a result of the incident, he hit his left shoulder and head on the pillar between the windshield and the glass on the driver's door. Mr. Liberchuk explained that he declined medical attention because he did not have any medical insurance and could not afford to pay hospital bills. (N.T. 3/9/05, pp. 61-63, 69.)

Mrs. Liberchuk, who was in the passenger seat, claimed that she hit her face against the side of the van, the dashboard, and the door, which caused bleeding from her head and elbow. She explained that she was numb, her head was throbbing, and she could not see. Despite these alleged injuries, Mrs. Liberchuk also refused medical treatment when offered by a police officer at the scene. She explained that the reason she did not request an ambulance or go to the emergency room was because neither she nor her husband, who were both unemployed at the time of the accident, had medical insurance. (N.T 3/9/05, pp. 8-10, 24.)

The Liberchuks' testimony regarding their various injuries was directly contradicted by police reports that made no mention of any injuries. Detective Aninsman, who was at the scene of the accident, testified that if someone had been bleeding, as Mrs. Liberchuk claimed she was, that would have been noted in the police report. (N.T. 3/9/05, pp. 24, 51, 53.)

While both the Liberchuks testified that they felt pain in the days following the accident, neither sought medical treatment until five weeks after the accident.

Mr. Liberchuk testified that the night of the accident, he began to experience headaches, stiffness in his neck, shoulder and lower back. While the pain in his shoulder and head went away, the pain in his lower back allegedly remained and moved into his right leg. Nonetheless, Mr. Liberchuk attended work the following day at his new job, although he claimed that for the first two weeks following the accident, his wife or daughter had to drive him to work because he had difficulty operating a vehicle. (N.T. 3/9/05, pp. 62-64, 69, 72-74.)

Mrs. Liberchuk testified that for the first few weeks following the accident, she had injuries and pain in her face, neck, shoulder and arm, as well as bad headaches. She claimed that her face was swollen, her right eye was black and swollen, and that she had a "gap" on her forehead. Despite these alleged injuries, Mrs. Liberchuk never sought medical treatment until five weeks after the incident. No medical reports or pictures of these injuries were ever presented to the jury. (N.T. 3/9/05, pp. 12-15, 25-26, 30.)

Mrs. Liberchuk also testified that she became depressed, and as such, could not leave the house and was afraid to drive. This testimony was contradicted by Mr. Liberchuk's testimony (and prior sworn testimony) wherein he claimed that immediately following the accident, his wife had to drive him to work. (N.T. 3/9/05, pp. 13, 28, 72-75.) Mrs. Liberchuk further stated that she did not seek immediate medical treatment because she was waiting for their health insurance to take effect. However, it was established that the couple did have medical benefits under their car insurance policy that would have provided them with coverage for treat-

ment.[2] Mr. Liberchuk explained that he did not understand how the system worked and did not want to incur any medical bills. (N.T. 3/9/05, pp. 11, 19, 26-27, 71-72.)

When the couple finally sought medical treatment in September 2000, five weeks after the accident, it was through a chiropractor, Dr. Olga Itkin. According to Dr. Itkin's report,[3] Mrs. Liberchuk told her that the reason she had not previously sought medical treatment was because she was depressed. The report failed to mention anything about not having insurance or the financial ability to pay for medical treatment. When confronted with this discrepancy, Mrs. Liberchuk testified that she could not recall exactly what she had said to Dr. Itkin, but that both statements were true. (N.T. 3/9/05, pp. 26-28, 64; exhibit P-1.)

Dr. Itkin treated Mr. Liberchuk with a spine adjustment, ultraviolet light, hot packs, and massage. Mr. Liberchuk visited Dr. Itkin two to three times per week and testified that he would feel fine after the treatment, but then the next morning the pain would return. Mrs. Liberchuk complained to Dr. Itkin of a bad headache, pain in the neck and shoulders and lack of feeling in her right arm and fingers. Dr. Itkin gave Mrs. Liberchuk x-rays and ultrasounds and treated her with paraffin baths, heating pads and massage. Both Mr. and Mrs. Liberchuk treated with Dr. Itkin for five months and stopped treat-

---

2. The medical bills for treatment that the Liberchuks eventually received were, in fact, paid under the Liberchuks' car insurance carrier, with the exception of $1,195.13 that remained unpaid. This amount was sought by the Liberchuks in this litigation. (N.T. 3/9/05, p. 72.)

3. Dr. Itkin did not testify at trial. Her reports were introduced pursuant to Pa.R.C.P. §1311.1.

ing in February of 2001. (N.T. 3/9/05, pp. 12-14, 30, 64, 67.)

Dr. Itkin also referred the couple to a neurologist, Dr. Levin, and an orthopedic surgeon, Dr. Smith. Plaintiff chose not to call either Drs. Smith or Levin at trial and their reports were admitted into evidence through Pa.R.C.P. §1311.1, which allows for introduction of documents where the plaintiff stipulates to $15,000 as the maximum damages recoverable. (Exhibits P-2, P-3, P-5 and P-6.) These reports detailed numerous "impressions" such as "post-traumatic cephaldigia," "post-traumatic anxiety reaction" and references to strain and sprain. None of these "impressions" were explained to the jury. Moreover, nowhere in any of Drs. Levin or Smith's reports is it stated that any injuries suffered by the Liberchuks were the result of the August 6, 2000 incident.

Mr. Liberchuk saw Dr. Levin and Dr. Smith a total of one time each. The Levin report reflects that Mrs. Liberchuk saw Dr. Levin for pain and numbness in her "right side," but never returned to see him. At a prior hearing on this matter, Mrs. Liberchuk testified that she saw Dr. Levin for pain in her arm and her "whole left side." At trial, Mrs. Liberchuk claimed that the reference to "left side" must have been a misprint. (N.T. 3/9/05, pp. 33-34, 83.)

Both Mr. and Mrs. Liberchuk chose to continue with Dr. Itkin until February 2001, at which point he felt "much better" and she was "feeling a whole lot better." Neither saw any doctors or chiropractors in the four years preceding trial, although both claimed to have lingering effects of the injuries. At the conclusion of Roman

Liberchuk's treatment with Itkin, $1,195.31 of medical bills remained unpaid. (N.T. 3/9/05, pp. 17-18, 30, 67, 83, 89.)

In addition to unreimbursed medical expenses, the Liberchuks also sought recovery for damage to the minivan. According to the damage estimate, the front bumper and fog headlights had to be replaced and the side loading door had to be repaired The total cost to repair the van was $1,151, but Mr. Liberchuk was only required to pay the deductible of $500. (N T. 3/9/05, pp. 31-32, 36, 38-42, 89; exhibit P-7.)

On March 9, 2005, the case was submitted to a jury with defendant Nolte stipulating to liability. By agreement, the verdict sheet contained interrogatories for economic and noneconomic damages for Mr. Liberchuk and only noneconomic damages for Mrs. Liberchuk. (N.T. 3/9/05, p. 112.) As set forth above, the jury found that Mr. Liberchuk sustained economic damages in the amount of $1,695.13.[4] The jury declined to award any noneconomic damages to either Mr. or Mrs. Liberchuk. (N.T. 3/9/05, pp. 137-38.)

On July 13, 2005, we denied the Liberchuks' post-trial motions, seeking a new trial on the issue of damages, or in the alternative, for additur.

## LEGAL ANALYSIS

Anna and Roman Liberchuk first assert that they are entitled to a new trial on the issue of damages because

---

4. This award was consistent with the $1,195.31 in medical bills from Dr. Itkin and the $500 out-of-pocket expense for property damage.

the jury verdict of zero for noneconomic damages was against the weight of the uncontroverted evidence. Specifically, they claim that a new trial on damages is warranted because the evidence regarding their injuries was unrebutted. The Liberchuks cite to *Davis v. Mullen,* 565 Pa. 386, 391, 773 A.2d 764, 767 (2001), which holds that an award of medical expenses without compensation for pain and suffering is only permissible if the jury did not believe the plaintiff suffered any pain and suffering. In relying on *Davis,* they argue that the jury did not have a reasonable basis to find that they did not suffer any pain and suffering, particularly because Nolte did not present any evidence to rebut their testimony on injuries. (See plaintiffs' motion for post-trial relief, ¶¶13-16.) Because the jury's verdict in this case was entirely reasonable, this court properly denied the Liberchuks' request for a new trial.

The decision to grant a new trial lies within the discretion of the trial court and shall only be set aside where the court's decision constitutes an abuse of discretion. *Martin v. Evans,* 551 Pa. 496, 501-502, 711 A.2d 458, 461 (1998). A new trial should only be granted where the verdict is so contrary to the evidence as to shock one's sense of justice, and not where the evidence is conflicting or where the trial judge would have reached a different conclusion on the same facts. *Davis,* 565 Pa. at 390, 773 A.2d at 766. A damages verdict should be set aside for inadequacy, only when it appears to have been the "product of passion, prejudice, partiality or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff." *Kiser v. Schulte,* 538 Pa. 219, 225, 648 A.2d 1, 4 (1994).

The existence of compensable pain and suffering is an issue of credibility for a jury who must believe that a plaintiff suffered pain before they can be compensated for that pain. *Davis,* 565 Pa. at 396, 773 A.2d at 769. "A jury is not required to award a plaintiff any amount of money if it believes that the injury plaintiff has suffered in an accident is insignificant." *Lombardo v. DeLeon,* 828 A.2d 372, 375 (Pa. Super. 2003). An insignificant injury is an injury that the jury concludes did not result in compensable pain and suffering. *Majczyk v. Oesch,* 789 A.2d 717, 725 (Pa. Super. 2001). "[W]hile the jury may have concluded that appellant [has] suffered some painful inconvenience for a few days or weeks after the accident, [the jury] may also have concluded that appellant's discomfort was the sort of transient rub of life for which compensation is not warranted." *Id.* at 726.

The facts in *Davis* are instructive in analyzing the jury's role in determining compensable pain and suffering. Davis was injured when he collided head-on with the defendant's vehicle The impact caused Davis' fully loaded tractor-trailer to turn over on its side. Davis was taken by ambulance to a hospital where he was discharged the same day and given a prescription for pain medication. At trial, Davis testified that he was in pain over the weekend, but returned to work the following Monday. Twenty days later he sought treatment from a chiropractor who diagnosed a muscle spasm and misalignment of the cervical spine. After 20 visits, Davis stopped treatment and did not take any pain medication for the injuries. *Davis,* 565 Pa. at 389, 773 A.2d at 765.

After the jury declined to award Davis any damages for pain and suffering, the trial court denied his motion for a new trial wherein he alleged that such an award

was "grossly inadequate." On appeal, the Pennsylvania Superior Court reversed and, relying on *Dougherty v. McLaughlin,* 432 Pa. Super. 129, 134, 637 A.2d 1017, 1019-20 (1994),[5] found that a jury award is per se inconsistent if it compensates for medical expenses stemming from the injuries incurred but does not compensate for pain and suffering arising from those same injuries. *Davis,* 565 Pa. at 396, 773 A.2d at 769. The Pennsylvania Supreme Court reversed the Superior Court, specifically rejecting a per se rule that precludes a jury from awarding medical expenses without a corresponding award for pain and suffering. In affirming the trial court, the Supreme Court held that:

"[A] jury's award of medical expenses without compensation for pain and suffering should not be disturbed where the trial court had a reasonable basis to believe that: (1) the jury did not believe the plaintiff suffered any pain and suffering, or (2) that a preexisting condition or injury was the sole cause of the alleged pain and suffering." *Davis,* 565 Pa. at 391, 773 A.2d at 767.

Here, the Liberchuks argue that there was not a reasonable basis for the jury to find that they did not suffer any pain and suffering because their evidence of injury was unchallenged. We disagree.

---

5. In *Dougherty,* plaintiff presented uncontradicted medical evidence that his two-day hospitalization included treatment for injuries to the face, neck and head, resulting in permanent scarring and nerve damage, a fractured rib, whiplash, a concussion and torn shoulder ligaments. The Superior Court held that the jury's award of damages for medical expenses, but not for pain and suffering, was inconsistent and accordingly, remanded the case for a new trial. *Dougherty,* 432 Pa. Super. at 130, 135, 637 A.2d at 1018, 1020.

In addition to the fact that neither Mr. nor Mrs. Liberchuk sought medical attention immediately after the incident, through cross-examination, Nolte's counsel was able to establish that:

• Mrs. Liberchuk did not seek medical assistance for any of her injuries until five weeks after the accident. (N.T. 3/9/05, p. 30);

• Although Mrs. Liberchuk testified that the right side of her body hit the right side of the car, she previously testified under oath that the right side of her body had hit the dashboard. (N.T. 3/9/05, pp. 21-23);

• Mrs. Liberchuk testified that following the accident, she suffered from shooting pains down the *right* side of her body. However, on cross-examination, she acknowledged that in prior sworn testimony, she stated that she suffered from shooting pains down the *left* side of her body. (N.T. 3/9/05, pp. 32-33); and

• Mrs. Liberchuk testified that as a result of this incident, she was unable to drive her car, or otherwise leave the house, for two weeks because she was too scared. Roman Liberchuk acknowledged that in prior sworn testimony, he stated that his wife drove him to work during this time period because he was unable to do so himself. (N.T. 3/9/05, pp. 73-74).

As for Roman Liberchuk's claim for pain and suffering, while he asserted that he began to suffer from shoulder pain, neck pain, and headaches the night of the accident, he acknowledged that he went to work the next day and waited five weeks before seeking any type of medical assistance. (N.T. 3/9/05, pp. 69-71.) Mr. Liberchuk continued to see a chiropractor until February 2001, six months after the accident, at which point

he felt "much better" and never sought further treatment. (N.T. 3/9/05, p. 67.)

These facts are very similar to those in *Davis*, where the plaintiff did not miss any work as a result of the accident. Moreover, Davis waited 20 days after the accident before visiting a doctor while the Liberchuks waited five weeks. Additionally, in *Davis*, the jury's verdict of zero damages was upheld despite the fact that Davis was taken to a hospital by ambulance after a head-on collision. In contrast, the Liberchuks swerved to avoid debris, ran over a radiator and drove home after the accident, refusing medical treatment. Given these facts, it was entirely reasonable for the jury to decline to award pain and suffering damages to the Liberchuks. See *Davis*, 565 Pa. at 396-97, 773 A.2d at 770 (defendant's cross-examination of plaintiff revealed inconsistencies sufficient for the jury to find that plaintiff suffered no compensable pain and suffering).

In their motion for post-trial relief, the Liberchuks also assert that the "dispositive" reason the *Davis* court upheld the jury's zero damages for pain and suffering was due to the treating physician's testimony that he could not say for certain if the injury was related to the accident at issue or prior accidents. (See plaintiffs' memorandum of law in support of their motion for post-trial relief). *Davis* was not decided on this basis, Rather, the court upheld the zero verdict because Davis admitted he did not miss any work; he waited 20 days after the accident before visiting a doctor; he stopped treating after only 20 visits; his lack of follow-up treatment *and* due to the fact that Davis' doctor could not say for certain if the injury was related to the accident. *Davis*, 565 Pa. at 396-97, 773 A.2d at 770.

The Liberchuks' reliance on *Marsh v. Hanley,* 856 A.2d 138 (Pa. Super. 2004) and *Burnhauser v. Bumberger,* 745 A.2d 1256 (Pa. Super. 2000), which prohibits a zero damage award for pain and suffering, as precedent, is also misplaced. In *Marsh,* the plaintiff's vehicle was struck twice during an accident and spun around 180 degrees. Plaintiff was taken by ambulance to the hospital and missed significant periods of time from work. *Marsh,* 856 A.2d at 139. Under these unique set of facts, the court found that a zero award for pain and suffering was appropriate. The *Marsh* facts are in stark contrast to the case before us where the Liberchuks were involved in a far less serious accident, refused medical treatment at the scene, and missed no time from work.

Similarly, the plaintiff in *Burnhauser* was involved in a collision with an on-coming vehicle, was taken immediately from the scene to the emergency room and consulted an orthopedic specialist six days after the accident. *Burnhauser,* 745 A.2d at 1258. Again, these facts are much different than the case before us where, among other things, the Liberchuks waited five weeks before seeking treatment from a chiropractor.

Lastly, the Liberchuks argue that in the alternative to a new trial on damages, additur is warranted because of the inadequacy of the jury verdict.[6] To support this argument, they rely upon *Fiorenza v. Kohn,* 396 Pa. Super. 1, 3, 577 A.2d 1384, 1386 (1990), where the Pennsylvania Superior Court affirmed the trial court's granting of a

---

6. Additur is a trial court's order that increases the damages awarded by a jury to avoid a new trial. [*Black's Law Dictionary,* 39 (7th ed. 1999).]

motion for additur based on the inadequacy of the verdict.

*Fiorenza* is not applicable to this case. In *Fiorenza,* the trial court, sitting as a fact-finder in a car accident case, was presented with stipulated facts. Upon review of its initial damage award, the trial court increased its verdict due to an "erroneous interpretation of the facts." *Fiorenza,* 396 Pa. Super. at 4, 577 A.2d at 1386. This procedural scenario is inapplicable to the case before us where a jury's verdict was rendered on a disputed set of facts.

The test for determining inadequacy of a verdict is whether the award is so inadequate that it should not be permitted to stand. *Fiorenza,* 396 Pa. Super. at 3, 577 A.2d at 1386. Granting the request for additur would require this court to set aside an entirely reasonable jury verdict. For the same reasons that it was correct to deny the Liberchuks' request for a new trial, it was also proper to deny their request for additur.

## CONCLUSION

The jury's verdict should not be set aside as it was not in any way unreasonable. Consequently, the Liberchuks' motion for post-trial relief was properly denied.