Lili DETTERLINE, Individually and Lili Detterline as Administratrix of the Estate of Bradley Detterline, Deceased and Lili Detterline as Guardian for her Minor Children Eric Detterline and Bradley Detterline, Jr., Appellees,

v.

D'AMBROSIO'S DODGE, INC. and Chrysler Corporation.

Appeal of D'Ambrosio's Dodge, Inc.

Superior Court of Pennsylvania.

Argued Nov. 1, 2000.

Filed Dec. 4, 2000.

Kevin Riechelson, Philadelphia, for appellant.

David L. Pennington, Philadelphia, for Detterline, appellee.

Before JOYCE, J., OLSZEWSKI, J. and CIRILLO, President Judge Emeritus.*

OLSZEWSKI, J.:

¶ 1 D'Ambrosio's Dodge, Inc. appeals the trial court's order denying its post-trial motion for judgment notwithstanding the verdict ("JNOV"), a new trial, and/or remittitur. We affirm.

¶ 2 The trial court found:

[Appellee] commenced this action as a result of a motor vehicle accident that occurred on July 22, 1990 in which Bradley W. Detterline, Sr. was killed. Decedent was driving his 1985 Dodge Ram Charger on a country road in Monroe County when the vehicle left the roadway and struck a tree. The testimony at trial (viewed, as it must be, in the light most favorable to the verdict winner) showed that upon impact, the spare tire, mounted behind the rear seat of the vehicle, came loose from its position, flew along the inside of the roof, and struck the decedent in the back of his neck.

[Appellee] and decedent had purchased the vehicle from [appellant] and, as a condition of the sale, [appellant]

was to provide a spare tire in the rear cabin of the vehicle. The salesman provided the spare tire as promised and mounted it in the rear cabin.

\* \* \*

*Autopsy Report*

Part of an autopsy report that was filed in Monroe County following the decedent's accident was admitted into evidence at trial as Court Exhibit 1. The autopsy had been performed and a report filed by Mr. Robert Allen, the coroner, and Dr. M.L. Cowen, the pathologist.

\* \* \*

[Appellee] called Dr. James Lewis, a forensic pathologist, as an expert witness. He stated that he relied upon the autopsy report, photographs and police report in forming his opinion.... He ... opined that (1) Mr. Detterline died of a high cervical fracture and a separation of his spinal cord at the C1 and C2 level; (2) had Mr. Detterline not suffered a fracture of the cervical spine at C1 and C2 level, he would have survived the accident; (3) the other injuries he sustained would have caused him some discomfort, but he would not have died because of them; and (4) the fracture which he opined was the cause of death was consistent with a patient having been struck in the back of the neck by the force of a spare tire disengaging from its mounting in the rear of the vehicle, hitting that area in the back of the neck, breaking the high cervical vertebrae, and tearing his spinal cord at that level.

*Mounting of Spare Tire*

[Appellee's] testimony at trial indicated that when she and her husband returned to the dealership with their new-

---

\* President Judge Emeritus Cirillo did not participate in the consideration or decision of this case.

ly purchased vehicle and requested that the spare tire be mounted, the salesman went into the service area and returned with hardware for mounting the spare tire and mounted it as she watched. She stated on cross-examination that she saw the pieces of hardware that the salesman used to mount the spare tire, one being triangular at the base, and remembered that the salesman was having difficulty with the mounting and the retaining bolt. She also testified that the decedent has changed the tire once and remounted the other tire in its place and that he replaced a small piece of hardware provided by the salesman with a larger piece so that the tire would be more secure in its mounting and not rattle as much. There was evidence that the bolt used to secure the tire to the sidewall was the bolt which the salesman had provided.

### Accident Reconstruction

[Appellee] called William C. Fisher, a licensed private investigator specializing in automobile accident reconstruction and homicide investigations, to reconstruct the accident. He stated that during the course of his investigation, he observed and examined under a field microscope various red hairs of the decedent.... One was found on the spare tire, one was found on the rim of the steering wheel at the one o'clock position and others were found within the vehicle. These hairs were consistent with the physical findings of the autopsy report. From Mr. Fischer's review of the case, his visit to the scene and examination of the vehicle, he opined ... that when the vehicle hit the tree, and the collision forces were at their greatest, the spare tire tore loose and hit the back of the driver's head, forcing his head down to the one o'clock position of the steering wheel. Mr. Fischer found a

depression and the decedent's red hair at that point on the steering wheel. He compared the indentation and hair on the steering wheel with marks on the decedent's face from the autopsy report. He also stated that there was no evidence of body contact with the windshield of the vehicle;

\* \* \*

When questioned about the tire mounting, Mr. Fischer opined that the tire mounting hardware used to secure the spare tire was not case hardened and was not appropriate to withstand impact forces. He opined with a reasonable degree of scientific certainty that the materials and configuration of hardware used to retain the spare tire was insufficient to do its intended job. In both his direct examination and on cross examination, Mr. Fischer stated with a reasonable degree of scientific certainty that the materials used in securing the tire to the side wall of the vehicle were not sufficient to retain the tire in a serious impact and given the materials supplied, even if the spare tire was mounted as securely as possible, it would release from its mounting due to the failure of the hardware upon the impact.

Trial Court Opinion, 2/4/00, at 1–6.[1] After the jury returned a verdict for plaintiff and set damages at $676,000, appellant filed a post-trial motion requesting JNOV, a new trial, or remittitur. The court denied those motions, resulting in this appeal.

¶ 3 Appellant raises four issues on appeal:

A. Did the trial court err in permitting appellee[s] to introduce portions of the incomplete, unauthenticated and hearsay autopsy report and in allowing appellees' experts to rely upon the autopsy report as the cornerstone of their conclusions[?]

---

1. The trial court's opinion is dated 2/3/00, but the docket reflects that it was filed on 2/4/00.

This does not affect our disposition.

B. Did the trial court err in denying the motion in limine to preclude the testimony of appellees' expert, James Lewis, for having an insufficient basis for his opinion[?]

C. Did the trial court err in denying the motion in limine to preclude the testimony of appellees' expert, William Fischer as it was speculative[?]

D. Did the appellees present sufficient evidence at trial from which the jury could award damages?

Brief of Appellant at 3.

◼ ¶ 4 We begin with our standards of review.

> The decision whether to grant a new trial lies within the trial court's discretion. *Martin v. Evans,* 551 Pa. 496, 501–02, 711 A.2d 458, 461 (1998). Therefore, when reviewing an order denying a motion for a new trial, we must determine whether the trial court "clearly and palpably abused its discretion or committed an error of law which affected the outcome of the case." *Whyte v. Robinson,* 421 Pa.Super. 33, 617 A.2d 380, 382 (1992). "A new trial is warranted when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice." *Martin,* 551 Pa. at 501, 711 A.2d at 461.

*Brinich v. Jencka,* 757 A.2d 388, 395 (Pa.Super.2000). " 'Further, if the basis of the request for a new trial is the trial court's rulings on evidence, then such rulings must be shown to have been not only erroneous but also harmful.... Evidentiary rulings which did not affect the verdict will not provide a basis for disturbing the jury's judgment.' " *Ratti v. Wheeling Pittsburgh Steel Corp.,* 758 A.2d 695, 707 (Pa.Super.2000) (quoting *Foflygen v. Allegheny General Hosp.,* 723 A.2d 705 (Pa.Super.1999), appeal denied, 559 Pa. 705, 740 A.2d 233 (1999)).

> Conversely, JNOV may be entered if, after considering only the evidence supporting the verdict and giving the verdict winner the benefit of the doubt, the trial court clearly finds that the movant is entitled to judgment as a matter of law, and the evidence presented at trial was such that no two reasonable minds could disagree that the verdict should be in favor of the movant.

*Brinich,* 757 A.2d at 395 (citations omitted). Finally, "the admission or exclusion of evidence is within the sound discretion of the trial court. In reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law." *Ratti,* 758 A.2d at 707.

◼ ¶ 5 Appellant first claims that the court below erred in admitting pages two through six of the autopsy report, *see* N.T., 2/22/99, at 17, without requiring the coroner to authenticate the report. *See* Brief of Appellant at 9. We first note that while the trial court admitted the report, no one read the report into evidence, nor did the jury ever see the report. The court below admitted the report without testimony based on 42 Pa.C.S.A. § 6151, which states:

> Medical charts or records of any health care facility ... that are susceptible to photostatic reproduction may be proved as to foundation, identity and authenticity without any preliminary testimony, by use of legible and durable copies, certified ... by the employee of the health care facility charged with the responsibility of being custodian of the originals thereof.

Appellant does not disagree that this provision applies, but instead claims that the court erred in admitting the report under *Commonwealth v. McCloud,* 457 Pa. 310, 322 A.2d 653 (1974). In *McCloud,* the Commonwealth proved legal causation, an element of the crime, by reading the autopsy report into evidence without producing the medical examiner who performed the autopsy. *See id.* at 654. The appellant appealed, arguing that the Commonwealth violated his Confrontation Clause rights under the Pennsylvania Constitu-

tion. *See id.* at 655. Our Supreme Court agreed:

> We therefore hold that in a homicide prosecution, evidentiary use, as a business records exception to the hearsay rule, of an autopsy report in proving legal causation is impermissible unless the accused is afforded the opportunity *to confront* and cross-examine the medical examiner who performed the autopsy, absent a compelling necessity.

*Id.* at 656–57 (footnote and citations omitted) (emphasis added). The Court relied on the Confrontation Clause, which states, "In all *criminal prosecutions* the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, [and] to meet the witnesses face to face[.]" Pa. Const. Art. 1, § 9 (emphasis added). There is no support in the plain meaning of the Confrontation Clause for a *civil* right to confront witnesses. Moreover, we can find no case applying the Court's reasoning in *McCloud* to a civil defendant. We decline appellant's invitation to do so ourselves. Additionally, *McCloud* is distinguishable on other grounds as well. First, the Court there objected to the *opinion* contained in the autopsy report. *See McCloud*, 322 A.2d at 656; *see also Commonwealth v. Mitchell*, 391 Pa.Super. 100, 570 A.2d 532, 534 (1990) (Judge Olszewski's opinion, in which Judges Cavanaugh and Cercone concurred, stated that because the trial court only admitted the facts from the autopsy report but not medical opinion, *McCloud* could be distinguished.). Here, the court below admitted only the *facts* from the autopsy report but intentionally omitted the medical opinions therein. Further, in *McCloud*, the Commonwealth read the autopsy report into evidence, while here the court merely admitted it into evidence without showing or reading it to the jury. We therefore find that *McCloud* is not on point. Appellant's first argument is without merit.

■ ¶ 6 Appellant next contends that the trial court erred in allowing appellees'

expert witness, forensic pathologist Dr. James Lewis, to testify because "Dr. Lewis did no independent investigation or examination of his own to determine the . . . cause of death." Brief of Appellant at 20. Our Rules of Evidence state:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions . . . the facts or data need not be admissible in evidence.

Pa.R.E. 703. Appellant does not dispute that experts in Dr. Lewis' field rely on autopsy reports. Instead, it complains that Dr. Lewis did not arrive at his own opinion but rather repeated the medical opinion from the autopsy report. *See* Brief of Appellant at 20. We have previously held:

> "An 'expert' should not be permitted simply to repeat another's opinion or data without bringing to bear on it [his] own expertise and judgment. Obviously, in such a situation, the non-testifying expert is not on the witness stand and truly is unavailable for cross-examination. The applicability of the rule permitting experts to express opinions relying on extrajudicial data depends on the circumstances of the particular case and demands the exercise . . . of the sound discretion of the trial court."

*Sheely v. Beard*, 696 A.2d 214, 218 (Pa.Super.1997) (quoting *Primavera v. Celotex Corp.*, 415 Pa.Super. 41, 608 A.2d 515, 521 (1992)). In the case at hand, Dr. Lewis relied on the facts from the autopsy report, photos from the scene of the accident, autopsy photos, and photos of the interior of the vehicle. *See* N.T., 2/22/99, at 78, 81. Dr. Lewis then used his expertise to arrive at an opinion regarding the cause of death. *See id.* at 79. We see no error in allowing Dr. Lewis to rely on the autopsy report and photos in coming to a conclusion.

¶ 7 Next, appellant claims that the court erred in allowing appellees' accident reconstructionist, William Fischer, to testify because his testimony was speculative.[2] *See* Brief of Appellant at 3, 24. Certainly an expert witness must state his or her opinion with "reasonable certainty." *Peerless Dyeing Co., Inc. v. Industrial Risk Insurers,* 392 Pa.Super. 434, 573 A.2d 541, 547 (1990). Appellant guides us to a portion of Mr. Fischer's testimony on cross-examination:

> Q. If you'll look at Page 2 of your [accident reconstruction] report ... [i]t says: "Based on the careful analysis of the above materials and my training and experience, it is my opinion that it can be established to a reasonable degree of scientific certainty that the particular injury given as the cause of death, was caused by a spare tire which had been insecurely mounted in the right rear interior of the vehicle."
>
> A. Yes, sir.
>
> * * *
>
> Q. And you used the term insecurely mounted. Is that because whoever affixed the tire to the wall did so in a manner that would create an insecurity in the mounting, or is it because the materials that were used to affix the tire to the side wall of the vehicle, were not sufficient to retain that wheel in a serious impact, or both?
>
> A. Either or both of your hypothesis [sic] would have contributed to the release of the wheel. If it had been improperly mounted, even given the materials that were supplied, it might release, and certainly had it been mounted as securely as possible, given these materials, it would release.

N.T., 2/23/99, at 193–94. Appellant claims that because Mr. Fischer said that either

hypothesis could be correct, he did not state his opinion "with reasonable certainty." Brief of Appellant at 24. On direct examination, Mr. Fischer testified, "the materials and configuration of the hardware used to retain the rear tire, or the spare tire, was insufficient to do its intended job. It failed during collision with the tree and it released the tire into the roof and back of the head of the driver." N.T., 2/23/99, at 185–86. He also said that he had "a reasonable degree of scientific certainty" as to that opinion. *Id.* at 185. We do not find these statements contradictory. On cross-examination, Mr. Fischer simply admitted that improper mounting technique could have contributed to the accident, though he maintained his position that the mounting materials were inferior. He stated his opinion with reasonable certainty, and that is all we require. We therefore hold that the court did not err in allowing Mr. Fischer to testify regarding the cause of the accident.

¶ 8 Lastly, appellant argues that the jury's award of $676,000 was "extremely excessive, exorbitant and against the weight of evidence" and thus that the court below erred in denying its motion for remittitur. Brief of Appellant at 30. On review, we must determine

> [w]hether the award of damages "falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake or corruption." On appeal, [we are] not free to substitute [our] judgment for that of the fact finder. Rather, it is our task to determine whether the post-trial motions judge committed a "clear" or "gross" abuse of discretion when conducting its initial evaluation of a defendant's request for remittitur.

---

2. Appellant includes a number of unrelated arguments under this heading, *see* Brief of Appellant at 27–28, but these allegations have no logical connection with appellant's stated issue of "Did the trial court err in denying the motion in limine to preclude the testimony of appellees' expert, William Fischer, as it was speculative." *Id.* at 3. Thus, we do not address them further.

*Gunn v. Grossman,* 748 A.2d 1235, 1241 (Pa.Super.2000) (citations omitted). Appellant argues that the jury's award of damages was excessive because the jury did not have "adequate information to make [its] award of damages." Brief of Appellant at 30. "A plaintiff need only provide the jurors with a reasonable amount of information sufficient to enable them to estimate damages without engaging in speculation." *Cohen v. Albert Einstein Med. Ctr.,* 405 Pa.Super. 392, 592 A.2d 720, 729 (1991). Here, Mrs. Detterline testified regarding the decedent's education, employment history, relationship with his family, and salary of eight dollars per hour. *See* N.T., 2/22/99, at 22–24. She also testified that he spent twenty-five dollars per week on himself. *See id.* at 42. The trial judge instructed the jury that the decedent could have been expected to live 46.4 more years. *See* N.T., 2/24/99, at 21. This testimony provided sufficient basis for the jury to make its award. Further, the award does not shock our sense of justice by any means.

¶ 9 Judgment affirmed.