J. A32042/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARGARET WILSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| PETER L. KING, D.P.M., | : | |
| | : | |
| Appellant | : | No. 1178 EDA 2014 |

Appeal from the Judgment Entered March 27, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division No(s).: November Term, 2010 No. 3488

| | | |
|---|---|---|
| MARGARET WILSON, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| PETER L. KING, D.P.M., | : | |
| | : | |
| Appellee | : | No. 1379 EDA 2014 |

Appeal from the Judgment Entered March 27, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division No(s).: 03488 Nov. Term 2010

BEFORE: PANELLA, OLSON, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED APRIL 16, 2015**

Appellant/Cross-Appellee, Peter L. King, D.P.M. ("Dr. King"), appeals

from the judgment entered by the Philadelphia County Court of Common

Pleas following an order granting in part and denying in part his motion for

---

[*] Former Justice specially assigned to the Superior Court.

post-trial relief following a jury verdict in favor of Appellee/Cross-Appellant, Margaret Wilson ("Wilson"). Dr. King alleges the trial court erred by permitting Dr. Andrew Schneider, an oncologist, to testify as to the standard of care for Dr. King, a podiatrist. Dr. King maintains the court erred by permitting two of Wilson's experts to testify and holding that Wilson introduced sufficient evidence of causation. Wilson cross-appeals on the basis that the court improperly reduced the jury's verdict from $1.1 million to $750,000. We affirm.

We adopt the facts and procedural history set forth in the trial court's opinions. **See** Trial Ct. Op., 6/27/14, at 1-5; Trial Ct. Op., 6/12/14, at 1-3.[1] Following the February 28, 2014 verdict, Dr. King filed a timely post-trial motion requesting judgment notwithstanding the verdict, a new trial, or a remittitur. Before the court rendered its ruling on Dr. King's post-trial motion, it entered judgment on the verdict on March 26, 2014. On April 3,

---

[1] Although both parties requested that the trial transcript be part of the certified record, the record transmitted to this Court did not include the complete trial transcript. We have held that failure to include the trial transcript in the certified record typically precludes appellate review. **Floyd v. Phila. Elec. Co.**, 632 A.2d 1314, 1315 (Pa. Super. 1993). More recently, however, our Supreme Court held "that where the accuracy of a pertinent document is undisputed, the Court could consider that document if it was in the Reproduced Record, even though it was not in the record that had been transmitted to the Court." Pa.R.A.P. 1921 note (citing **Commonwealth v. Brown**, 52 A.3d 1139, 1145 n.4 (Pa. 2012)). In this case, because a copy of the trial transcript is part of the reproduced record and neither party has disputed its accuracy, we will resolve the parties' claims on their merits. **See id.**

2014, the court entered the order granting in part and denying in part Dr. King's post-trial motion. Dr. King timely appealed on April 8, 2014, and Wilson timely cross-appealed on April 14, 2014. On May 6, 2014, the court again entered judgment in favor of Wilson.[2] Both parties filed timely court-ordered Pa.R.A.P. 1925(b) statements. This Court *sua sponte* consolidated the parties' appeals.

Dr. King raises the following issues on appeal:

> Did the trial court err in permitting Andrew Schneider, M.D. ("Dr. Schneider"), an oncologist, to testify as to the standard of care for Dr. King, a podiatrist, under the common law of Pennsylvania when Dr. Schneider testified that he did not treat foot ulcers, he never diagnosed cancer of the foot and the patients he sees have already been diagnosed with cancer or cancer was suspected, and when he has not shown an overlap between the standard of care for an oncologist and for a podiatrist concerning cancer of the foot?

> Did the trial court err in denying the motions of Dr. King for compulsory non-suit and for post-trial relief when Wilson's experts, Dr. Schneider and [Jack Gorman, D.P.M. ("Dr. Gorman")], failed to meet the requirements of Pennsylvania Rule of Evidence 705 by not indicating the basis for their conclusion that Dr. King had violated the standard of care required of a podiatrist in not timely diagnosing squamous cell carcinoma of the left foot?

> Did the trial court err in denying the motions of Dr. King for compulsory non-suit and for post-trial relief because Wilson produced insufficient evidence of causation where her experts, Dr. Schneider and [Dr. Gorman], failed to

---

[2] Thus, this Court's appellate jurisdiction was perfected. ***See generally Johnston the Florist, Inc. v. TEDCO Const. Corp.***, 657 A.2d 511, 514 (Pa. Super. 1995) (*en banc*).

> indicate a causal connection between any breach of the standard of care by Dr. King and any injury suffered by Wilson and failed to meet the requirements of Pennsylvania Rule of Evidence 705 by not setting forth sufficient evidence to support causation?

Dr. King's Brief at 5-6.

We summarize Dr. King's arguments for all of his issues.[3]  Dr. King claims that Dr. Schneider had no experience with podiatrists and the court should not have permitted him to testify about the standard of care for podiatrists.  He maintains that Dr. Gorman, a podiatrist, gave such conclusory testimony that, in conjunction with Dr. Schneider's flawed testimony, a new trial was warranted.  Dr. King asserts that Dr. Gorman and Dr. Schneider's testimony also failed to comply with Pa.R.E. 705, which states that an expert "must state the facts or data on which the opinion is based."  Pa.R.E. 705.  We hold Dr. King has not established entitlement to relief.

---

[3] Despite raising three issues, King makes five arguments, thus violating Pa.R.A.P. 2119(a), which mandates that "argument shall be divided into as many parts as there are questions to be argued."  **See** Pa.R.A.P. 2119(a). We decline to quash.  **See PHH Mortg. Corp. v. Powell**, 100 A.3d 611, 615 (Pa. Super. 2014) (refusing to quash appeal despite numerous violations of appellate briefing rules); **see also Commonwealth v. Briggs**, 12 A.3d 291, 343 (Pa. 2011) ("The briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference; rather, they represent a studied determination by our Court and its rules committee of the most efficacious manner by which appellate review may be conducted so that a litigant's right to judicial review as guaranteed by Article V, Section 9 of our Commonwealth's Constitution may be properly exercised.").

An appellate court will reverse a trial court's grant or denial of a JNOV only when the appellate court finds an abuse of discretion or an error of law. Our scope of review with respect to whether judgment n.o.v. is appropriate is plenary, as with any review of questions of law.

> In reviewing a motion for judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. Moreover, a judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner. Further, a judge's appraisement of evidence is not to be based on how he would have voted had he been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations.

> There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

Questions of credibility and conflicts in the evidence are for the fact-finder to resolve and the reviewing court should not reweigh the evidence. If there is any basis upon which the jury could have properly made its award, the denial of the motion for judgment n.o.v. must be affirmed.

***Braun v. Wal-Mart Stores, Inc.***, 24 A.3d 875, 890-91 (Pa. Super. 2011) (*per curiam*) (punctuation and citations omitted), *aff'd*, 106 A.2d 656 (Pa. 2014).

With respect to an order resolving a motion for a new trial, the standard of review is abuse of discretion. ***Harman v. Borah***, 756 A.2d 1116, 1122 (Pa. 2000). The analysis has two stages.

> First, the trial court must decide whether one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. Second, if the trial court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

*Id.* (citations omitted). If the alleged mistake involved a discretionary matter, then our standard of review is abuse of discretion; if the alleged mistake involved an error of law, then our standard of review is *de novo*. *Id.* at 1123 (citations omitted).

"It is axiomatic that questions concerning the admission or exclusion of evidence are within the sound discretion of the lower court and will be

reversed on appeal only where a clear abuse of discretion exists."

**Bucchianeri v. Equitable Gas Co.**, 491 A.2d 835, 838 (Pa. Super. 1985).[4]

> Before a court will order a new trial, it must conclude that the errors at trial led to an incorrect result. Unless there is a substantial reason therefor, a new trial should not be granted in a negligence case. In an appeal from a jury trial, where the moving party alleges reversible error he must show not only the existence of the error, but also that the jury was misled by this error to his detriment. It is only when improperly admitted evidence may have affected a verdict that a new trial will be the correct remedy.

**Warren v. Mosites Const. Co.**, 385 A.2d 397, 401 (Pa. Super. 1978) (citations omitted).

We need not resolve whether having an oncologist testify as to the standard of care for a podiatrist was error. Assuming that the trial court erred by permitting Dr. Schneider to testify, we ascertain whether Dr. Schneider's testimony misled the jury such that it led to an incorrect result in this medical malpractice action. **See id.**; **Harman**, 756 A.2d at 1122. In this case, Dr. Gorman, a podiatrist, testified that Dr. King "deviated from the standard of care of a reasonable prudent podiatrist" by failing to timely biopsy Wilson's nonhealing ulcer to ascertain the existence of cancer. N.T., 2/23/14, at 32, 34-35 (trial deposition). We add that Dr. Gorman arrived at his opinion prior to reviewing Dr. Schneider's expert report. **Id.** at 31; Ex. C

---

[4] We may rely on cases predating the adoption of the Pennsylvania Rules of Evidence to the extent those cases do not contradict the rules. **See Commonwealth v. Aikens**, 990 A.2d 1181, 1185 n.2 (Pa. Super. 2010).

to King's Motion in *Limine* to Preclude Wilson's Expert, Dr. Gorman, from Offering Expert Oncologic Testimony Regarding Causation and Damages Against King, 6/11/13 (Report of Dr. Gorman, 12/21/10).[5]   Because a podiatrist, Dr. Gorman, testified that Dr. King deviated from a podiatric standard of care, and the basis for that opinion predated a review of Dr. Schneider's report, which corroborated Dr. Gorman's initial report, we cannot conclude Dr. Schneider's testimony affected the verdict and led to an incorrect result.  **See Warren**, 385 A.2d at 401.  Indeed, we observe that Dr. King himself testified that a nonhealing ulcer is a symptom of the cancer at issue and that a biopsy is the only method to diagnose that cancer.  N.T., 2/21/14, at 32-33.

Regarding King's second and third issues, we state the following as background.  "If an expert states an opinion the expert must state the facts or data on which the opinion is based."  Pa.R.E. 705.  "The disclosure can be accomplished in several ways. One way is to ask the expert to assume the truth of testimony the expert has heard or read.  Another option is to pose a hypothetical question to the expert."  Pa.R.E. 706 cmt.  "But the required disclosure can also be made by simply asking the expert to state the facts or

---

[5] We acknowledge that Dr. Gorman, after reviewing Dr. Schneider's report, prepared supplemental reports reiterating his initial findings.  **See, e.g.**, N.T., 2/23/14, at 31; Ex. C to King's Motion in Limine to Preclude Wilson's Expert, Dr. Gorman, from Offering Expert Oncologic Testimony Regarding Causation and Damages Against King, 6/11/13 (Report of Dr. Gorman, 1/7/13).

data on which the opinion is based either before or after requesting the opinion." Leonard Packel & Anne Bowen Poulin, Pennsylvania Evidence § 705-1 (4th ed. 2013).

After careful consideration of the parties' briefs, the certified record, and the decision of the Honorable Leon Tucker, we affirm King's second and third issues based on the trial court's decision. *See* Trial Ct. Op. at 17-18 (concluding that Drs. Schneider and Gorman identified photographs, deposition testimony, other expert reports, and learned treatises they relied on in arriving at their conclusions, which established causation); *accord* Packel, *supra*. Without exhaustively recounting the expert testimony, we add that both doctors testified that the delay in diagnosing Wilson's cancer caused her foot amputation. *See, e.g.*, N.T., 2/23/14, at 52; N.T., 2/20/14, 29, 60. Accordingly, as there is a basis upon which the jury could have rendered its verdict, we must affirm the denial of King's motion for judgment notwithstanding the verdict. *See Braun*, 24 A.3d at 891.

Having resolved the issues in King's appeal, we address Wilson's issues:

> Did the trial court err as a matter of law and abuse its discretion by granting judgment [notwithstanding the verdict], in favor of . . . King . . . as to past medical expenses, thereby eliminating the jury's verdict on past medical expenses, where a review of the record clearly leads to the conclusion that the law and evidence requires a verdict on medical expenses in favor of [Wilson]?
>
> Did the trial court err as a matter of law and abuse its discretion by granting remittitur on the jury's verdict of

> $1.1 million, reducing the verdict to the pain and suffering award of $750,000.00 only and setting aside the jury's award of $350,000.00 for past medical expenses, where there is no evidence that the jury's award for past medical expenses was influenced by "caprice, prejudice, partiality, corruption or some other improper influence", or that the jury's award as to past medical expenses "so shocks the sense of justice as to suggest the jury was influenced by partiality, prejudice, mistake or corruption"?

Wilson's Brief at 7.

In support of her first issue, Wilson contends King was not entitled to JNOV because she "is entitled to recover damages for past medical expenses paid by Medicare for which she may be required to reimburse Medicare from any verdict" in her favor. *Id.* at 18. She maintains that no two reasonable minds could agree that the evidence was insufficient to establish the amount of her past medical expenses. We hold Wilson is not entitled to relief.

As noted above, the standard of review for an order resolving a motion for JNOV is abuse of discretion or error of law. *See Braun*, 24 A.3d at 890. Instantly, the trial court did not enter, in **King's** favor, a **judgment** notwithstanding the verdict. The court entered judgment in favor of **Wilson** for $750,000. J., 5/6/14, at 1. Thus, this Court cannot reverse the trial court's order granting King's motion for JNOV, as the trial court never ruled in his favor. *See generally Braun*, 24 A.3d at 890.

Lastly, Wilson argues that the court erred by granting remittitur and eliminating the jury's award of $350,000 for past medical expenses. She asserts that the jury's award was not excessive or "guided by partiality,

prejudice, mistake or corruption." Wilson's Brief at 18. Wilson claims that she did not need to "provide the jury a specific number to award for past medical expenses." *Id.* at 27. Rather, she insists that she only had to provide the jury "a reasonable amount of information sufficient to enable [the jury] to estimate damages without engaging in speculation." *Id.* (quoting **Detterline v. D'Ambrosio's Dodge, Inc.**, 763 A.2d 935, 941 (Pa. Super. 2000)). We discern no basis for granting relief to Wilson.

Our Supreme Court has discussed remittitur as follows:

> Judicial reduction of a jury award is appropriate only when the award is plainly excessive and exorbitant. The question is whether the award of damages falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption.
>
> [T]he excessiveness of the verdict is peculiarly within the discretion of the trial court and will not be reversed unless an abuse of discretion or an error of law has been committed.

**Haines v. Raven Arms**, 640 A.2d 367, 369 (Pa. 1994); **accord Zauflik v. Pennsbury Sch. Dist.**, 104 A.3d 1096, 1129 (Pa. 2014).

In **Detterline**, this Court examined whether the trial court erred in denying the defendant's motion for JNOV and remittitur. **Detterline**, 763 A.2d at 936. In **Detterline**, the decedent's wife sued the defendant for negligence stemming from a motor vehicle accident that resulted in her husband's death. *Id.* The jury awarded damages of $676,000, and the defendant moved for remittitur because the jury lacked sufficient

information to justify its award. *Id.* at 940-41. The **Detterline** Court held the trial court did not abuse its discretion because the decedent's wife "testified regarding the decedent's education, employment history, relationship with his family, and salary of eight dollars per hour." *Id.* (citation omitted). Further, the trial court instructed the jury that the decedent could have lived for "46.4 more years" and the amount did not shock this Court's conscience. *Id.* Thus, this Court discerned no abuse of discretion. *Id.*

The instant case is unlike **Detterline** in that Wilson did not introduce any evidence substantiating the monetary amount of her past medical expenses. We acknowledge that King's medical expert testified that Wilson's past medical expenses were necessary. *See* N.T. 2/26/14, at 70. But no testimony was elicited as to the amount, unlike the testimony of the decedent's wife in **Detterline**. *See Detterline*, 763 A.2d at 936. Given the paucity of Wilson's evidence, we discern no abuse of discretion by the trial court for granting King's request for remittitur. *See Haines*, 640 A.2d at 369. Conversely, absent evidence, it is difficult to conclude that the amount of the award at issue was fair and reasonable. *See id.* Accordingly, having discerned no abuse of discretion or error of law, we affirm the judgment below.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/16/2015